TOM DUNN v THE STATE.

No. 5303.   Decided May 14, 1919.

**1.—Murder—Continuance—Cumulative Evidence—Reversible Error.**

Where the testimony of the absent witness was material in support of defendant's theory and testimony that the deceased was the aggressor, and to the particular things to which the absent witness would have testified there was no other witness, although other witnesses testified to other threats of similar character, the rule justifying the refusing of an application for a continuance to secure cumulative evidence is inapplicable and the continuance should have been granted.   Following Beard v. State, 55 Texas Crim. Rep., 157, and other cases.

**2.—Same—Evidence—Cross Examination—Argument of Counsel—Waiver.**

Where, upon trial of murder, it was shown that the brother of the defendant was an eyewitness to the homicide but was not present at the trial, it was reversible error to permit the State on cross-examination of the defendant to exhibit to the witness a written statement of his brother, bantering him to admit this in evidence, and afterwards in his argument to refer to this matter, the obvious and necessary consequence of the whole proceeding being to prejudice the defendant's case by getting before the jury illegal and inadmissible testimony of a harmful character, and using the fact that the defendant objected to its admission in argument against him; and the failure to object to this argument by requested charge is not a waiver.   Following Harris v. State, 72 Texas Crim. Rep., 120, and other cases.

Appeal from the District Court of Hamilton. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*Arthur R. Eidson,* for appellant.—On question of argument of counsel:   Morgan v. State, 54 Texas Crim. Rep., 542, 113 S. W. Rep., 934.

On question of conduct of State's counsel with reference of written statement:   Sarli v. State, 80 Texas Crim. Rep., 161, 189 S. W. Rep., 154 and cases cited for opinion.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, JUDGE.—This appeal is from a conviction for murder, the punishment being assessed at thirty-five years confinement in the penitentiary.

The deceased was the husband of appellant's daughter.   A separation had taken place and she had returned to her father's home, and complained to her father of various acts of abuse, including a charge of infidelity and threats of personal violence.   Eyewitnesses for the State described an unprovoked and an unjustifiable homicide.   Appellant, testifying in his own behalf, presented the theory of manslaughter, due to information of insulting conduct

toward his daughter; also that of self-defense against danger, real and apparent. These issues were presented to the jury by the court in his charge.

The court overruled appellant's second application for a continuance upon the ground that the evidence sought was cumulative of the testimony of appellant and some of his witnesses. The absent witness would have testified in detail to several conversations with the deceased in which animosity toward the appellant was expressed, and threats to kill him and other members of his family; also efforts to arm himself in preparation for the execution of his designs. The witness also would have disclosed his communication of these matters to the appellant a short time before the homicide, and would have testified, in connection therewith, he had told the appellant that the threats were seriously made, and advised precautions against harm to himself and family. The appellant. testifying in his own behalf, claimed that the absent witness Thompson had made to him the statements detailed in the application for continuance, and the fact that such communication was made comes, so far as we are able to ascertain, from no other witness. There was testimony that the deceased had made threats to kill his wife which were communicated to the appellant; also testimony that the deceased at one time said he felt like killing the appellant and the outfit, or something like that, and that he at one time got a pistol belonging to the witness Thompson, but the date is not fixed. Appellant's daughter testified that she had heard Thompson tell her father "a lot of things."

The fact that the matters detailed in the application for a continuance were said by the deceased to Thompson was not directly in evidence at all, and that Thompson communicated them to appellant was before the jury from appellant's testimony alone, and it was contended in argument by the State that his testimony in that specific particular was untrue. The testimony of the absent witness was material in support of appellant's theory and testimony that the deceased was the aggressor. Appellant claimed that at the time he fired deceased was making an attack upon him with an open knife in his hand. It was conceded that the deceased had the knife in his hand at the time, but denied that he made a demonstration. Thompson's affidavit verifying the correctness of the allegations in the application for a continuance was before the court and considered on motion for a new trial. We think it is not entirely accurate to say that the testimony of the absent witness was cumulative of that of other witnesses. In the sense that other witnesses testified to other threats of a similar character, and that some of them were communicated, the testimony was cumulative, but that the particular things to which the absent witness would have testified there was no other witness. The fact that Thompson communicated

them to the appellant rested upon appellant's testimony alone. The rule justifying the refusing of an application for a continuance to secure cumulative testimony, as declared in Harvey v. State, 35 Texas Crim. Rep., 545, has been held inapplicable to a state of facts like these. Beard v. State, 55 Texas Crim. Rep., 157; Asken v. State, 47 Texas Crim. Rep., 365; Koller v. State, 36 Texas Crim. Rep., 499; Casey v. State, 51 Texas Crim. Rep., 433; Phipps v. State, 34 Texas Crim. Rep.. 560; Morgan v. State, 54 Texas Crim. Rep., 549; Gilcrease v. State, 33 Texas Crim. Rep., 619. The best evidence that the deceased had made the threats in the presence of Thompson, and that Thompson had told the appellant of them, would have been the evidence of Thompson, and the appellant was entitled to the best evidence obtainable to support his defense, and to obtain the best evidence he was entitled to a reasonable delay and not driven to the necessity of relying upon his own testimony alone. The rule applied by Presiding Judge Hurt in Gilcrease v. State. and which is adopted in the case of Morgan v. State, and others, supra, should, in our judgment, control in this one. We quote it as follows:

"An application to continue for the want of testimony of the witnesses to prove threats made by the deceased to kill defendant, which were communicated to him; also, to prove that deceased, as well as his brother, had guns at the place and time of the shooting. The theory of the State was that appellant, unprovoked, killed the deceased; that of the defendant was self-defense. Both theories were supported by testimony; hence a conflict in the testimony as to who was the aggressor—who began the violence. Threats, whether communicated or not, in such a conflict, are of very great importance, as they tend to solve the problem at issue. The State's witnesses deny that the deceased was armed with a gun at the time he was shot. If this be true, appellant was in no actual danger when he shot deceased, nor was the danger apparent, when all the circumstances are considered, and self-defense was not in the case. The application should have been granted, although it was the second application; and, after the trial, the court, viewing the facts of the case as developed on the trial, should have granted a new trial to have enabled the appellant to obtain the testimony, though it was somewhat cumulative."

Henry Dunn, brother of appellant, was an eyewitness to the homicide, but not present at the trial. In cross-examination of the appellant the district attorney said: "Henry Dunn, your brother, made a written statement. didn't he, before he left? Do you want to use his written statement. We have got it and will put it in evidence. You know his evidence would hurt you if he told the truth about it. Here is his written statement. You know his signature. Here is Henry's written statement. If you and your

lawyer want to use it, you may have it.'' Turning to the attorney
for appellant, and holding the paper, he said: ''I agree that this
is what he would swear to if he was here.'' Appellant's attorney said:
''We don't want to use it.'' The district attorney remarked: ''I
know you don't.'' Subsequently, before closing the case, the dis-
trict attorney said: ''I now offer the written statement of Henry
Dunn to the defendant and his counsel, and agree that this state-
ment is what Henry Dunn would testify if he was here and on
the stand.'' To all of this appellant addressed a prompt objection,
and brings it for review by several bills of exception.

The trial judge justified his action, as stated in his qualification,
upon the ground that the appellant in his cross-examination sought
to leave the impression on the jury that his brother's testimony,
if present, would help rather than hurt him. The testimony to
which he refers is as follows: ''I don't care if Henry was here
as a witness. It would not go against me if he told the truth about
it.'' To which he added: ''He would tell the truth about it if he
was at himself, but he is crazy about half the time.'' The court
sustained the objection to the introduction of the statement in evi-
dence, but overruled appellant's objection to the statements made
by the district attorney in his cross-examination and in his sidebar
remarks. Doubtless his failure to produce his brother as a witness,
or make an effort to do so, was a circumstance available to the
State, but no facts are shown which would render the statement of
his brother admissible as original testimony against appellant. The
trial court, as we understand the record, entertained the view that
the contents of his statement was not admissible, but sanctioned the
action of State's counsel in informing the jury that appellant's
brother had made the statement. Under the facts disclosed by the
bill, the court sustaining the objection to the introduction of the
written statement was of little consequence for the reason that the
district attorney, through the proceeding sanctioned by the court,
had thoroughly made the jury understand that the appellant's
brother had made a statement in the presence of the county attorney,
that it was in writing, that the State desired to use it, that the
defendant would not use it, and that the inference to be drawn was
that the statement would show his guilt. The fact that the state-
ments of the district attorney were in the form of an inquiry does
not alter the fact that they conveyed to the jury the information
mentioned above. Neither the fact that the statement was made,
nor the substance of it, was admissible against the appellant. Both
were hearsay. 38 Cyc., 1495; Baldwin v. Railway, 15 Atl. Rep.,
412; Sarli v. State, 80 Texas Crim. Rep., 161, 189 S. W. Rep.,
154; Rushing v. State, 62 Texas Crim. Rep., 310; Harris v.
State, 72 Texas Crim. Rep., 120. Proof of them is not rendered

admissible by the cross-examination referred to in the court's qualification to the bill.

In his closing argument to the jury the district attorney drew attention to the fact that the appellant had refused to offer the statement in evidence, and objected to the State reading it and that it had been excluded, adding: "The jury don't know what is in the statement; I do know from the fact that the defendant's own brother was not present at the trial as a witness, and from the further fact that defendant would not agree to his written statement of what had occurred to be offered in evidence, that it would be fair to infer that if the said Henry Dunn were present as a witness, that his testimony would corroborate the State's witnesses as to how the killing occurred, rather than Tom Dunn, the defendant." This statement is taken from the court's qualification of the bill relating to the argument. The conclusion is not to be escaped that the effect of this argument was to intensify the error in bringing the written statement and its substance before the jury, and to urge and use against the appellant the fact that he had invoked the ruling of the court to exclude the written statement which, in the opinion of the court, was inadmissible. The obvious and necessary consequence of the whole proceeding was to prejudice the appellant's case by getting before the jury illegal and inadmissible testimony of a harmful character, and using the fact that he objected to its admission in argument against him. The error in failing to sustain objection to this argument, which was made at the time, is not waived by the failure of appellant to request its withdrawal by a special charge. He did his utmost to prevent it getting before the jury, and it was so obviously harmful that it would have been futile to attempt its withdrawal. Harris v. State, 72 Texas Crim. Rep., 120; Millner v. State, 72 Texas Crim. Rep., 58; Askew v. State, 54 Texas Crim. Rep., 416; Rushing v. State, 62 Texas Crim. Rep., 310; Bullington v. State, 180 S. W. Rep., 681; Bradley v. State, 72 Texas Crim. Rep., 287, 162 S. W. Rep., 516; Sarli v. State, 80 Texas Crim. Rep., 161, 189 S. W. Rep., 149; Faulkner v. State. 80 Texas Crim. Rep., 341, 189 S. W. Rep., 1082; Hollingsworth v. State, 199 S. W. Rep., 628, 38 Cyc., 1495; Baldwin v. Ry.. 15 Atl. Rep., 412; Rudd v. Rounds, 25 Atl. Rep., 440; Moran v. Baldi, 53 Atl. Rep., 307.

In the other bills of exception considered, with their qualifications, we have discovered no error.

The matters discussed require a reversal, which is ordered.

*Reversed and remanded.*